## WIEGAND v. DUVAL-WRIGHT ENGINEERING CO.
### No. L-543.

Circuit Court, Clay County, Civil Appeal.

June 9, 1964.

Robert C. Gobelman of Mathews, Osborne & Ehrlich, Jacksonville, for appellant.

J. C. Sapp, Green Cove Springs, for appellee.

TYRIE A. BOYER, Circuit Judge.

This is an appeal from a judgment of the small claims court of Clay County to the circuit court in and for said county. The parties will be designated by their position in the lower court.

The plaintiff commenced suit by the filing of a "Statement of Claim" in the small claims court. The statement of claim is brief and informal as is allowed by the several acts of the legislature creating small claims courts in this state. The pertinent portion of the statement of claim alleges as follows —

"That each of said defendants by the use of heavy and ponderous machinery in the construction of a hard surface road, State Road 16 near Shands Bridge, did damage the house of the plaintiff whose home is located on lot 16 of Hallcrest subdivision, Clay County, Florida, in the months of February and March of 1962, said damage caused by the vibrations caused by the use of heavy equipment in said construction, causing the walls, ceiling and plaster thereof to crack and need repair."

The judge of the small claims court entered a final judgment in favor of the plaintiff and against the defendant Duval-Wright Engineering Co. (the claim against the other defendants having been otherwise disposed of) in the sum of $300, from which judgment this appeal was taken by the said defendant.

In brief, the pertinent facts are as follows — There was constructed for the plaintiff, in 1957, a home of concrete block construction. Said home contained more steel in the footings than was customarily required and the footings were considerably larger than customary. In order to avoid cracking around the windows and in the ceiling the plaintiff arranged for reinforcing around the window openings and for additional structural material in the ceiling to bear the weight and stresses. Prior to February of 1962, two small hairline cracks appeared, one in the exterior concrete blocks underneath a window and another in the interior above one of the doors.

In late February or early March of 1962, the defendant undertook certain construction incident to the building of a bridge in the vicinity of plaintiff's home. Incident to that construction defendant employed, simultaneously and at an accelerated pace, several large caterpillar tractors. They operated to within 140 feet of plaintiff's residence. The operation of the tractors resulted in vibrations of the earth in the vicinity of their operation, which vibrations were discernable in the home of the plaintiff and in the plaintiff's yard and could be felt through the soles of the feet while standing on the plaintiff's property. The vibrations could be synchronized with the movements of the tractors.

On "a couple of times" the plaintiff heard "popping noises" in the house while the heavy equipment was being operated. On one occasion plaintiff heard a "loud popping noise" and upon inspection observed a crack some 21 feet long in the ceiling of the living room. Upon further inspection additional cracks were discovered in the interior ceilings and the exterior walls of the house. It was for that damage that the plaintiff brought suit.

Because of the simplified and informal pleading allowed in small claims courts it is impossible to determine from the judgment from which this appeal is taken upon what theory it purports to be based; it being conceded by counsel that there are three possible theories worthy of consideration — negligence, nuisance, and trespass.

The trial judge heard the evidence and sat as a finder of the fact without a jury, therefore there exists a presumption of correctness as to findings on issues upon which there was conflicting evidence.

The plaintiff testified that by virtue of his own employment over a great number of years in similar related types of work he was familiar with the type of equipment being used by the defendant and the operation thereof. He testified that several tractors were operated simultaneously and at an accelerated speed. The defendant's superintendent on the job testified that he called for rubber-tired tractors but none were available for the particular job here involved and therefore vehicles operating on metal tracks were used. The job was completed in twenty-five percent less time than that allowed by the contract. Defendant's superintendent also testified that the faster a tractor is operated the more vibrations will be produced.

Classically, negligence is defined to be the failure to do what a reasonable and prudent person would ordinarily have done under all the circumstances of the given situation, or doing what such a person, under all existing circumstances, would not have done. The duty is dictated and measured by the exigencies of the occasion as they were known by the party charged with fault to exist, or should reasonably have been known or expected to exist. For a lengthy discussion as to the various interpretations which might properly be placed upon a single set of circumstances by the finder of the fact, to-wit: the jury or trial judge sitting without a jury, see Beikirch v. City of Jacksonville Beach, Fla. App. 1st, 159 So. 2d 898.

From the evidence adduced at the trial the trial judge could have properly found that the operation of multiple large tractors at 4/5ths of maximum speed (the evidence revealed that the tractors contained five forward gears and were customarily

operated in fourth gear) within 140 feet of plaintiff's residence, resulting in vibrations detectable in and about the residence, constituted an act which "a reasonable prudent person" would not ordinarily have done under such circumstances of the situation, and that such circumstances were known by the defendant to exist "or should reasonably have been known or expected to exist". In short, there is sufficient evidence in the record from which the trial court could have found, sitting without a jury as a finder of the fact, that the defendant was negligent under all circumstances of the situation.

Having determined that there is sufficient evidence from which the trial judge could have properly found the defendant to have been negligent, it is not necessary to discuss the other two possible theories upon which he could have based his judgment, to-wit: nuisance and trespass. However, gratuitously, this court notes that Florida Jurisprudence defines the term "nuisance" as follows —

"Nuisance, in law consists for the most part in so using one's property as to injure the land or some incorporeal right of one's neighbor. It is defined as the commission of an act or omission of a duty which either annoys, injures, or endangers the comfort, health, repose, or safety of the citizen, or which unlawfully interferes with or tends to obstruct or in any way render unsafe and insecure other persons in life or in the use of their property. The nuisance doctrine operates as a restriction on the right of an owner of property to make such use of it as he pleases. *Anything that annoys or disturbs one in the free use, possession, or enjoyment of his property or that renders its ordinary use or occupation physically uncomfortable may become a nuisance* and may be restrained." (23 Fla. Jur., Nuisances, §2) (Italics added.)

The same text contains the following —

"Nuisance and negligence are distinct torts. Liability for negligence is based on a want of proper care, whereas, as a general rule, *liability for nuisance does not depend on the element of negligence. Ordinarily, a person who causes a nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised to avoid that injury.* However, these torts may be, and frequently are, coexisting and practically inseparable, and it is difficult at times to distinguish between actions of nuisance and those based on negligence." (23 Fla. Jur., Nuisances, §4) (Italics added.)

"The maintenance of a nuisance often implies a continuity of action over a substantial period of time. *Under certain circumstances, however, a single act may establish the maintenance or continuance of a nuisance.* The extent of injury in a particular case depends not only upon the duration of interference with the use of enjoyment of the land, but also upon its degree.

*An interference with the use and enjoyment of land, involving substantial harm, subjects the offender to liability, however brief in duration the interference may be.* But in such cases, the present or threatened injury must be real, not transient or temporary." (23 Fla. Jur., Nuisances, §15) (Italics added.)

"An action for damages resulting from a nuisance and a suit to abate it are distinct remedies. The injured party has the right to elect whether he will proceed in a court of law to recover damages or in a court of equity to abate the nuisance. \*\*\*". (23 Fla. Jur., Nuisances, §70)

As revealed by the above quotations, the maintenance of a nuisance often implies a continuity of action over a substantial period of time, however, on occasion a single act may be sufficient to constitute a nuisance. It is also apparent that a person injured by a private nuisance is not relegated to injunctive relief but may recover damages in a suit at law. Though the facts in the case at bar are not classically those as thought of in a consideration of nuisance, the evidence adduced before the trial judge was sufficient from which he could have properly found facts bringing the situation within the law of nuisance.

Whether or not in our "enlightened space age" in which the terms "sonic", "supersonic", "rays" and the like are of everyday usage by children who a generation ago would have had no idea of their meaning, the appellate courts of this state will extend the term "trespass" to encompass invasions by non-physical and intangible agents yet remains to be seen. It is difficult to rationalize a logical distinction between damaging an individual's property by hurling thereon a physical and tangible body and the creation of the same damage by the hurling of rays and vibrations which though intangible and incapable of optical discovery are just as real and often times more potent — be that as it may, in view of that which has already been said herein, it is not necessary to here speculate as to the present-day law of trespass, as applied to the case at bar.

Coming now to the final point urged by the defendant, to the effect that there was insufficient evidence from which the trial judge, as finder of the fact, could properly find that the acts of the defendant were the proximate cause of the plaintiff's damages. The defendant strongly urges that in the absence of expert testimony as to cause and effect the plaintiff could not recover. In support of his contention, appellant cites Hearsey v. City of New Orleans, La., 192 So. 148, and Tadin v. New Orleans Public Service, La., 76 So. 2d 910. Said cases do appear to support defendant's contention, however unless and until an appellate court of the state of Florida adopts such a position this court is unwilling to hold such to be the law of this state. It has long been es-

tablished in Florida that circumstantial evidence may be the basis of a recovery in a civil action and it is even sufficient to sustain a conviction in a criminal case.

"The value of circumstantial evidence consists in the conclusive nature and tendency of the circumstances relied on to establish the controverted fact. Evidence of this kind is not per se of less weight than direct or positive evidence. Circumstantial evidence is often as strong as, and sometimes stronger than, positive evidence. Indeed, a well connected chain of circumstances is as conclusive of the existence of a fact as is the greatest array of positive evidence." (13 Fla. Jur., Evidence, §415)

\* \* \*

" \*\*\* The present rule is that the particular inference of the existence of the fact relied on as arising from the circumstances must outweigh all contrary inferences to such extent as to amount to a preponderance of all reasonable inferences that might be drawn from the same circumstances." (13 Fla. Jur., Evidence, §416)

Applying said law to this case, there was evidence before the lower court that the structural strength of the plaintiff's house exceeded the ordinary; that from the early part of 1957 to 1962, only two small hairline cracks appeared; that vibrations from the defendant's equipment could be detected in the house and the yard surrounding the house; and that the offending cracks appeared during the progress of such construction and vibrations. The witness, Frank Salvonika, who certainly qualified as an expert in the construction field, testified that after a building is built if a crack doesn't appear within 90 to 120 days the foundation will carry the building and any shrinkage in the concrete blocks will have occurred. The witness, Alvis D. Green, called on behalf of the defendant as its expert witness, testified that vibrations can cause cracks in a building, depending upon the intensity and length of the vibrations.

Under such circumstances the lower court could certainly properly have found from the evidence that the inference that the cause of the offending cracks was the acts of the defendant outweighed all contrary inferences to such an extent as to amount to a preponderance of all reasonable inferences that might be drawn from the circumstances.

Assuming, arguendo, that the Louisiana law urged by the defendant is the law of the state of Florida, nevertheless there was sufficient expert testimony as to causation — first, as aforesaid, the defendant's expert witness testified that long periods of intense vibrations could cause cracks in a building on adjoining property; and secondly, the plaintiff himself, in the opinion of this court, may reasonably have been held to be a qualified ex-

pert witness in the subject field. He was qualified by the Navy Department to supervise all of the building trades, including concrete workers, brick masons, boiler makers, boiler type brick masons, electrical works, plumbing, sheet metal works, roofing and all the trades incidental to the construction and building trade at the United States Hospital, and for over 18 years he occupied the second and third highest positions in the public works department of the United States Navy as a foreman of maintenance and construction and as chief draftsman. It is clear under the law of the state of Florida that formal education is not the only criterion to be considered in determining one's expertness in a particular field. F.S. 90.23 provides —

"The term, 'expert witness' as used herein applies exclusively to a person duly and regularly engaged in the practice of his profession, who holds a professional degree from a university or college and has had special professional training and experienced, *or one possessed of special knowledge or skill in respect of the subject upon which he is called to testify*". (Italics added.)

For the reasons stated the judgment of the lower court is affirmed.